IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANAESTELLE DE LA VEGA, | § | |
| *Plaintiff*, | § | 5-19-CV-00568-OLG-RBF |
| vs. | § | |
| USAA REAL ESTATE COMPANY, | § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando Garcia:**

This Report and Recommendation concerns the Second Partial Motion to Dismiss filed by Defendant USAA Real Estate Company. *See* Dkt. No. 15. The District Court referred this case for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C. *See* Dkt. No. 23. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, USAA's Motion, Dkt. No. 15, should be **GRANTED**.

**I.     Factual and Procedural Background**

Plaintiff Anaestelle De la Vega initiated this action on May 28, 2019, alleging that Defendant USAA discriminated against her based on her race and/or national origin by reassigning her from her position as Senior Director of Investment Accounting to USAA's process team. *See* Orig. Compl. (Dkt. No. 1). De La Vega further alleges that USAA retaliated against her by terminating her employment a week after she filed her charge of discrimination with the Equal Employment Opportunity Commission. *See id.* USAA subsequently moved to

dismiss De la Vega's discrimination claim on the grounds that the claim lacked factual allegations to support a causal connection between her national origin or race and the alleged adverse employment action—USAA's reassignment decision. *See* Dkt. No. 5. Rather than file a response to USAA's motion, De La Vega filed an Amended Complaint, thereby mooting USAA's motion. *See* Dkt. Nos. 9 & 12.

According to De La Vega's Amended Complaint, throughout her approximately nine years of employment with USAA, and "especially during the period she served as Senior Director of Investment Accounting," she was "frequently complimented in regard to her performance," her "willingness to 'go above and beyond,'" and her "engaging personality." Amend Compl. ¶¶ 7-8. In short, De La Vega alleges that "[e]veryone enjoyed working with her." *Id.* De La Vega's mid-year 2018 performance review, which is her most recent performance evaluation, rated De La Vega as "superior" in terms of her overall performance as Senior Director of Investment Accounting as well as in "treat[ing] others with courtesy and respect." *Id.* ¶ 9.

On January 9, 2019, however, Ron Brown, the Executive Director of Financial Reporting, summoned De La Vega to a meeting. *Id.* Also present at the meeting was De La Vega's immediate supervisor Michelle Carrasco (now Salas), Executive Director of Process Accounting. *Id.* At the meeting De La Vega was informed that Accounting Officer Eric Mack decided to reassign her to the Process Team because "[p]eople don't like [her] management style." *Id.* Although De La Vega concedes that the reassignment wouldn't have changed her job title or pay, she considered it a demotion because she wouldn't be in a supervisory role and would be less promotable. *See id.* ¶ 10. According to her Amended Complaint, it is De La Vega's "belief and understanding that neither Mr. Brown nor Ms. Carrasco (Salas) were

2

consulted about nor were they otherwise involved in Ms. De La Vega's demotion to the Process Team." *Id.* ¶ 11. And De La Vega doesn't accuse the decisionmaker Mack of possessing discriminatory animus.

De La Vega alleges that it was an individual named Joyce Hendry, who holds an unspecified position at USAA, who is ultimately responsible for De La Vega's reassignment. Hendry, De La Vega alleges, somehow and by some unspecified means "influenced and persuaded" Mack to demote De La Vega "because of [Hendry's] bias and prejudice against [De La Vega]." *Id.* In support, De La Vega alleges that "Hendry, on more than one occasion, made comments or remarks about Ms. De La Vega's race or national origin, and about how she did not believe that Ms. De La Vega had earned the promotions that she had received while employed with the Company or the praise that she had received for her performance from her supervisors, her peers, and her subordinates." *Id.* Prior to her alleged demotion, De La Vega asserts, she was the only Hispanic or Latina manager at her level of the organization. *See id*. She further alleges that she was replaced by a non-Hispanic, non-Latina employee. *See id.*

Believing her reassignment was impermissibly discriminatory, De La Vega filed a charge of discrimination with the EEOC on February 7, 2019, alleging race and national origin discrimination. *See id.* USAA then terminated De La Vega on February 14, 2019. *See id.* ¶ 12. Although De La Vega concedes that the charge hadn't been served on USAA at that time, she claims she previously informed both Brown and Carrasco of her intent to file a charge and that both Brown and Carrasco "passed that information along" to the persons who made the termination decision, including Mack and USAA's Director of Human Resources. *See id.* Consequently, De La Vega filed a new charge alleging retaliation premised on her termination.

The EEOC issued a dismissal and notice of rights on March 6, 2019, *see id.* ¶ 13, and De La Vega timely initiated this action a few months later.

USAA now moves to dismiss De La Vega's discrimination claim—for a second time, and this time after De La Vega already amended it in response to USAA's arguments. USAA reiterates that De La Vega's Amended Complaint lacks facts capable of supporting a reasonable inference that Hendry (1) possessed discriminatory bias or (2) influenced Mack's decision to reassign De La Vega. *See* Dkt. No. 15.

An October 16 Pretrial Conference, at which all parties appeared through counsel of record, provided the parties an opportunity to discuss the motion to dismiss. The September 12, 2019 Order setting the October 16 hearing informed the parties to "be prepared to discuss ***any motions that may be pending at the time of the conference***." Dkt. No. 24 (emphasis in original). At the hearing and during discussions about the motion to dismiss, asked De La Vega's counsel repeatedly declined a further opportunity to amend the Complaint to address the various deficiencies raised in the motion to dismiss. De La Vega explained that she couldn't provide additional factual allegations without the aid of discovery.

II.     Analysis

De La Vega's claim of racial and/or national origin discrimination warrants dismissal. The ultimate question with respect to her Title VII disparate treatment claim is "whether [USAA] took the [alleged] adverse employment against [De La Vega] *because of* her protected status." *Raj. v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (emphasis in original); *see also English v. Perdue*, 777 F. App'x 94, 99 (5th Cir. 2019). Although De La Vega doesn't need to establish a prima facie case of discrimination at this early juncture, she must "plead sufficient facts on all of the ultimate elements" of her claim to make the claim plausible. *Chhim v. Univ. of Tex. at Austin*,

836 F.3d 467, 470 (5th Cir. 2016); *see also Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) ("Because [the plaintiff] has not pled such facts, the district court properly dismissed her complaint."). Because she has failed to do so and disclaims any desire to replead, her claim should be dismissed.

De La Vega's disparate treatment claim is somewhat atypical. In a more typical case, the plaintiff might allege that the decisionmaker was biased. Here, however, De La Vega's claim turns on her belief that a third person—Hendry—possessed discriminatory bias against her *and* that Hendry then somehow influenced the decisionmaker's (Mack) reassignment decision. But De La Vega hasn't pled facts to plausibly state this type of a "cat's paw" claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss a complaint must contain "enough facts to state a claim to relief that is plausible on its face"). Indeed, de La Vega both fails to allege facts that could support an inference that Hendry harbored discriminatory animus and fails to allege facts that could support an inference that Hendry influenced Mack's decision to reassign De La Vega.

To start, De La Vega's bare allegations that Hendry "harbors ill will towards [her], because [she is] Hispanic or Latino" and that Hendry possesses a "discriminatory animus" towards her, Amend. Compl. ¶ 11, are insufficient. Mere conclusory statements like these, without reference to factual context, are "nothing more than a formulaic recitation of the elements" of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

What facts are alleged in the complaint aren't connected to Hendry's alleged animus. Take De La Vega's allegation that Hendry, "on more than one occasion made comments or remarks about Ms. De La Vega's race or national origin, and about how she did not believe that Ms. De La Vega had earned the promotions that she had received while employed with the

Company or the praise that she had received for her performance from her supervisors, her peers, and her subordinates." Amend. Compl. ¶ 11. De La Vega doesn't explain the context of Hendry's alleged race or national-origin comments or allege that they were negative; they merely indicate Hendry was aware of De La Vega's race or national origin.[1]

Likewise, the allegations about Hendry's remarks that De La Vega hadn't earned her promotions or praise don't include any basis to believe they were motivated by racial or national-origin animus as opposed to something else, like a personality conflict. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S at 678. To move from "'the factually neutral [to] the factually suggestive,'" and hence into the realm of an inference that is plausible, there must be some kind of link alleged between result and motive. *Cantu v. Moody*, 933 F.3d 414, 420 (5th Cir. 2019) (citing the lack of this type of link as grounds for dismissal and quoting *Twombly*, 550 U.S. 544, 557 n.5). Moving from the factually neutral to the suggestive isn't possible here because there aren't facts to link comments about undeserved praise and promotions (and ultimately a demotion) to alleged racial or national-origin bias.

Moreover, even if De La Vega plausibly alleged that Hendry had discriminatory animus, De La Vega still hasn't plausibly connected Hendry to the demotion decision. De La Vega hasn't provided Hendry's position within USAA or explained how or why Hendry would've or even

---

[1] *Compare Iqbal*, 556 U.S. at 678 (noting that a complaint doesn't suffice if it tenders "naked assertions devoid of further factual enhancement") (quotations and brackets omitted) *with Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) ("Although naked allegations of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence.") (quotations, brackets, and citations omitted).

could've influenced Mack's decision.[2] There is also nothing to reflect that any of Hendry's allegedly discriminatory remarks were relayed to Mack, let alone that this happened around the time Mack made the reassignment decision.[3] In order to play a role in a "cat's paw" theory like De La Vega's, Hendry would have to exert influence over Mack "in such a way as to co-opt h[is] decision making." *Ybarra*, 2018 WL 3949972, at *9. But here De La Vega hasn't offered any facts to plausibly suggest Hendry influenced Mack's reassignment decision.

For these reasons, USAA's motion to dismiss should be granted. De La Vega's subjective and conclusory belief that her reassignment resulted from Hendry's discriminatory animus is insufficient. *See Raj*, 714 F.3d at 330 (affirming dismissal because plaintiff didn't allege facts linking the employer's actions with plaintiff's race or national origin).

Finally, a brief word on amendment. At the October 16 hearing, counsel for De La Vega represented that De La Vega didn't want an opportunity to amend, intended to stand on the current pleadings, and couldn't cure the above-discussed deficiencies without discovery. De La Vega can't "file a conclusory complaint not well-grounded in fact, conduct a fishing expedition for discovery, and only then amend [her] complaint in order finally to set forth well-pleaded allegations." *Oreman Sales, Inc. v. Matsushita Elec. Corp. of Am.*, 768 F. Supp. 1174, 1180 (E.D. La. 1991); *see also Russell v. Choicepoint Servs., Inc.*, 302 F. Supp. 2d 654, 671 (E.D. La.

---

[2] In her charge of discrimination, which De La Vega attaches to her Amended Complaint, De La Vega asserts that Hendry is the Managing Director of Accounting and reports to Mack. That offers no insight into how Hendry—as Mack's subordinate—could have influenced his decision.

[3] *See, e.g.*, *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) ("If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker."); *Ybarra v. Texas Health & Human Servs. Comm'n*, No. CV B-17-174, 2018 WL 3949972, at *9 (S.D. Tex. Jun. 13, 2018), *report and recommendation adopted*, No. 1:17-CV-174, 2018 WL 3933486 (S.D. Tex. Aug. 16, 2018), *aff'd*, 773 F. App'x 222 (5th Cir. 2019) (dismissing sex-discrimination claim where plaintiff failed to plead facts to suggest co-worker who allegedly held discriminatory animus was the real decisionmaker).

2004). De La Vega hasn't provided a factual basis to support her discrimination claim and is either unwilling or unable to do so. Accordingly, dismissal of the discrimination claim is appropriate on this record. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002) (noting that court should allow a plaintiff at least one opportunity to cure pleading deficiencies before dismissing a case, "unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal").

### III. Conclusion and Recommendation

For the reasons discussed above, it is recommended that USAA's Second Partial Motion to Dismiss Plaintiff's First Amended Complaint, Dkt. No. 15, be **GRANTED**. Should the District Court adopt this Report and Recommendation, only De La Vega's retaliation claims will remain at issue.

In light of this recommendation and efficiency concerns, all discovery—including exchange of initial disclosures—should remain stayed while this Report and Recommendation is pending with the District Court. Therefore, discovery is **STAYED** until further order of the Court.

In the meantime, however, the standard Western District of Texas Confidentiality and Protective Order will be entered, as discussed at the October 16 hearing.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

Pursuant to the Referral Order, *see* Dkt. No. 23, and as I explained on the record at the October 16 hearing, any arguments not raised before me either in the parties' papers or in oral argument have no basis being raised in objections to the District Court.

**IT IS SO ORDERED**.

SIGNED this 7th day of November, 2019.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE

9